UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARD KAMILCHU,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SACRAMENTO, et al.,<br><br>    Defendants. | No. 2:21-cv-02245 DB P<br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his constitutional rights when they repeatedly slammed the food port hatch on plaintiff's cell door. Before the court is plaintiff's second amended complaint for screening (ECF No. 17). For the reasons set forth below, the second amended complaint will be dismissed with leave to amend.

**I.      Legal Standards for Civil Rights Complaints**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227–28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trs., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362, 371 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**II.     Allegations of the Second Amended Complaint**

The events giving rise to plaintiff's complaint took place at Sacramento County Main Jail between July 7, 2020 and May 16, 2021.  Plaintiff names three deputies, Holiman, Holman, and Richie, as defendants.[1]  According to plaintiff, whenever defendants passed food or other items through the food port hatch on plaintiff's cell door, they would "intentionally and unnecessarly [sic] slam bang with excessive force (while closing) and let drop the heavy hatch (opening) to create harmfull [sic] damaging noise."  (ECF No. 17 at 3.)  Plaintiff claims that this noise caused his ears to bleed.  (Id.)  Plaintiff further claims that "not all inmates housed there received this treatment," and that defendants ignored his requests to stop slamming his hatch.  (Id.)

In addition to bleeding ears, plaintiff alleges he suffered "injuries to hearing, ear/head pain, physical suffering and mentel [sic] anguish, sleep deprivation, hyper tension, anxiety, tinitis [sic], and . . . a barrier to the legal process through psychological/physical stress."  (Id. at 3, 4.)  He asserts two claims, one for excessive force (id. at 3) and one under the Eighth Amendment's prohibition on cruel and unusual punishments.  (Id. at 4.)

**III.     Does Plaintiff State Claims Cognizable under § 1983?**

**A. Legal Standard – Eighth Amendment and Fourteenth Amendment**

Plaintiff does not state whether he was a pretrial detainee or confined pursuant to a conviction at the time of the alleged events.  If he was confined as a result of a felony conviction, then the Eighth Amendment governs his claims; if he was a pretrial detainee, then the Fourteenth Amendment's Due Process Clause applies.  Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015).  Each standard is addressed below.

The Eighth Amendment prohibits "cruel and unusual punishments."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319

---

[1] Plaintiff initially identifies Deputy Holiman as "Holiman (#120)" and Deputy Holman as "Holman (#102)" and implies that they are separate defendants.  (ECF No. 17 at 1, 2.)  Later in the document, he appears to identify Holiman and Holman as the same person, where he refers to defendants as "Defendant's [sic] Holiman #120 (known to plaintiff as Holman #102) and B. Richie #551."  (ECF No. 17 at 3, 4.)

3

(1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320).  In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that he objectively suffered a sufficiently serious deprivation and that prison officials subjectively acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v. Seiter, 501 U.S. 294, 298–99 (1991).

**1. Excessive Force**

For claims arising out of the use of excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson, 503 U.S. at 7).  The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8, and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  Wilkins, 559 U.S. at 37–38 (citing Hudson, 503 U.S. at 9–10).

When a plaintiff alleging excessive force is a pretrial detainee, the Fourteenth Amendment governs the claim.  Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015).  "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'"  Id.  Unlike convicted prisoners, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  Id. at 396–97.  This assessment requires a court or factfinder to "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time . . .".  Id. at 397.

////

////

4

In assessing the reasonableness or unreasonableness of the force used, court may consider:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.

### 2. Conditions of Confinement – Excessive Noise

The Eighth Amendment requires "that [inmates] be housed in an environment that, if not quiet, is at least reasonably free of excess noise." Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998) (quotation omitted) (alteration in original). "[C]onstant, intense noise violates the Constitution," while "infrequent, mild noise" does not. Endsley v. Luna, 750 F. Supp. 2d 1074, 1102 (C.D. Cal. 2010).

Conditions of confinement for pretrial detainees are subject to the Fourteenth Amendment's Due Process Clause. Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008). "Under the Due Process Clause, detainees have a right against jail conditions or restrictions that 'amount to punishment.'" Id. (quoting Bell v. Wolfish, 441 U.S. 520, 535–37 (1979)). "Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate a pretrial detainee's right to be free from punishment." Hatter v. Dyer, 154 F. Supp. 3d 940, 945 (C.D. Cal. 2015). "Put another way, a government actor may impermissibly punish a pretrial detainee either by (1) intending to punish or (2) imposing conditions or restrictions not reasonably related to legitimate prison goals." Id. "This standard differs significantly from the standard relevant to convicted prisoners . . .". Pierce, 526 F.3d at 1205.

**B. Analysis**

Plaintiff has failed to state a claim under either the Eighth Amendment or the Fourteenth Amendment. As an initial matter, it is not clear whether plaintiff was a pretrial detainee or confined pursuant to a conviction when defendants allegedly violated his rights. This distinction matters, as it determines which constitutional standard applies. See Kingsley, 576 U.S. at 396–

5

1  97; Pierce, 526 F.3d at 1205.  Should plaintiff choose to pursue this action and file a third
2  amended complaint, he must clarify whether he was confined at Sacramento County Main Jail as
3  a pretrial detainee or subject to a conviction at the time of the alleged events.  Regardless of
4  which standard applies, plaintiff's second amended complaint fails to state a cognizable claim.

       **1. Excessive Force**

6        Slamming a food port hatch loudly does not constitute excessive force.  Black's Law
7  Dictionary defines "force" as "[p]ower, violence, or pressure directed against a person or thing."
8  *Force*, BLACK'S LAW DICTIONARY (11th ed. 2019).  "Threats and intimidation to gain control or
9  prevent resistance" can also constitute force.  *Constructive force*, BLACK'S LAW DICTIONARY
10  (11th ed. 2019); see, e.g., Robinson v. Solano County, 278 F.3d 1007, 1014 (9th Cir. 2002)
11  (plaintiff successfully pleaded an excessive force claim, where officer aimed a firearm at
12  plaintiff's head at close range while plaintiff was unarmed).  This court has defined excessive
13  force as "that degree of force which is in excess of what a reasonable and prudent officer would
14  apply, considering the need presented, the extent of injury inflicted, and any alternative means
15  available to control the detained person."  Jury Instructions, Adams v. Speers, No. CV F 02-5741
16  LJO DLB, 2009 WL 1106955, at *29 (E.D. Cal. Feb. 5, 2009).

17        Here, plaintiff alleges defendants loudly opened and closed the food port hatch on
18  plaintiff's cell door with the intent of harming plaintiff.  (ECF No. 17 at 3, 4.)  This alleged action
19  does not constitute force because it is not an application of power, violence, or pressure against
20  plaintiff, nor could it put plaintiff in reasonable apprehension for his safety the way a threat
21  would.

22        Even assuming defendants' alleged actions could constitute force against plaintiff, they do
23  not violate the Eighth Amendment or the Fourteenth Amendment.  "The Eighth Amendment's
24  prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional
25  recognition *de minimis* uses of physical force, provided that the use of force is not of a sort
26  repugnant to the conscience of mankind."  Wilkins, 559 U.S. at 37–38 (quoting Hudson, 503 U.S.
27  at 9–10).  Prison officials must have acted "maliciously and sadistically."  Id. at 37.  To violate a
28  pretrial detainee's Fourteenth Amendment rights, prison officials must have "purposely or

knowingly used" force that was "objectively unreasonable." Kingsley, 576 U.S. at 396–97.  (Id.)

In this case, noisily opening and closing a food port hatch would represent a *de minimis* use of physical force, one that is not "repugnant to the conscience of mankind." Id. at 38.  The pleadings also fail to state that defendants acted maliciously and sadistically.  Plaintiff claims that he showed defendants his "bleeding ears" and that defendants were "even present at [plaintiff's] appointment for [the] ear doctor," which he believes demonstrates that they knew "that their actions had [a] direct affect [sic] on plaintiff's health" but nonetheless continued to slam the hatch. (ECF No. 17 at 3.)  However, no reasonable officer would have attributed plaintiff's bleeding ears to slamming the hatch because such a connection is improbable, if not impossible. Denton v. Hernandez, 504 U.S. 25, 32–33 (1992) ("[A] court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" (internal citations omitted)).

Moreover, the grievance forms plaintiff submitted with the second amended complaint undermine plaintiff's assertions that defendants knowingly or intentionally slammed the hatch.  In a grievance form dated December 25, 2020, plaintiff stated that he asked a deputy named Quillen to tell defendant Holman and another unnamed deputy to not slam the hatches.  (ECF No. 17 at 6.)  Quillen allegedly told plaintiff, "We are just in a hurry to go home."  According to plaintiff, the unnamed deputy, "hearing this conversation[,] came around and slammed [plaintiff's] tray slot as hard as he could and then walked to the cell nearby . . . and lightly closed it (just to show he meant malice)."  (Id.)  Plaintiff did not explain how he knew that the unnamed deputy had overheard plaintiff's conversation with Quillen.  In another grievance dated January 5, 2021, plaintiff stated, "I have been experiencing hearing issues, headaches and other issues due to officers [sic] careless actions . . . and am being seen by a hearing specialist, due to these effects of the careless/malice actions of some of these deputies."  (Id. at 7.)  Notwithstanding plaintiff's conclusory statements that defendants acted maliciously, plaintiff's repeated use of the word "careless" and Quillen's alleged explanation for the noise support an allegation of negligence, but not that defendants acted maliciously and sadistically.

////

Applying the Fourteenth Amendment standard, plaintiff has not pleaded sufficient facts to establish that defendants knowingly or purposefully used objectively unreasonable force against him. For the same reasons discussed above, plaintiff's claim that he showed defendants his bleeding ears does not establish that defendants knowingly or purposely slammed the hatch. Plaintiff also asserts that he made "countless requests . . . asking the two defendants to desist" in slamming the hatch, but that they ignored these requests. (ECF No. 17 at 3.) Plaintiff's requests indicate that defendants perhaps should have known that the sound caused plaintiff pain, but not that they subjectively knew this fact and purposefully or knowingly slammed the hatch.

Additionally, the pleadings do not establish that slamming the hatch was objectively unreasonable. In his January 5, 2021 grievance, plaintiff recommended that prison officials install "rubber stoppers on all tray slot hatches," thereby acknowledging that the loud noise caused by the hatches was an inherent feature of their design, and not the result of defendants' conduct. (Id. at 7.)

Accordingly, plaintiff has failed to plead a cognizable excessive force claim.

**2. Excessive Noise**

Plaintiff has also failed to plead a cognizable claim regarding the alleged excessive noise caused by defendants' use of the hatch. Ninth Circuit precedence indicates "that constant, intense noise violates the Constitution," but that "infrequent, mild noise . . . does not." Endsley, 750 F. Supp. 2d at 1102 (collecting cases). In the second amended complaint, plaintiff states that defendants loudly opened and closed the food port hatch "many times per day," and that defendants' conduct caused him to experience pain, sleep deprivation, mental anguish, and other symptoms. (ECF No. 17 at 3, 4.) However, plaintiff has not alleged that this noise was constant or that it occurred at nighttime, such that it interfered with his ability to sleep. Cf. Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996) (finding a disputed issue of material fact where plaintiff produced sufficient evidence "that at all times of day and night inmates were 'screaming, wailing, crying, singing and yelling,' often in groups, and that there was a 'constant, loud banging.'"); see Grizzle v. County of San Diego, No.: 17-CV-813 JLS (PCL), 2018 WL 1603212, at *5 (S.D. Cal. Apr. 3, 2018) ("Plaintiff has not stated how often the noise occurred, nor that it was

1 constant. The Court cannot find that the noise is 'excessive' and therefore, Plaintiff has not
2 alleged the noise level violates his constitutional rights.").

One of plaintiff's grievances implies that the noise was not constant. On May 7, 2021, plaintiff submitted a message request that listed each time defendants Richie and Holman each slammed plaintiff's hatch between April 5 and April 24, 2021. (ECF No. 17 at 12.) According to plaintiff's log, defendants did not slam the hatch every day during this period, and defendants do not appear to have slammed it on the same day as each other. (Id.) The slamming appears to have only occurred once per day during this period, except for April 20, when defendant Richie allegedly slammed the hatch at lunchtime and dinnertime. (Id.) Plaintiff stated that "[g]oing back earlier (3/20/21), it happened more frequent [sic]," but did not include additional information about this earlier period or the period between July 7, 2020 and March 19, 2021. (Id.) Plaintiff's own filings therefore demonstrate that defendants' conduct was not sufficiently constant to create an Eighth Amendment violation, at least between April 5 and April 24, 2021.

Plaintiff has also failed to plausibly allege that defendants acted with "obduracy and wantonness," as required to plead an Eighth Amendment claim, or, to the extent plaintiff was a pretrial detainee, that defendants intended to punish him in violation of the Fourteenth Amendment. Whitley, 475 U.S. at 319; Hatter, 154 F. Supp. 3d at 945. As discussed above, the second amended complaint and plaintiff's grievances suggest that defendants accidentally slammed the hatch, or that they could not have avoided making a loud noise due to the hatch's design.

An official can also violate the Fourteenth Amendment when he intentionally takes an adverse action against a detainee that is not reasonably related to a legitimate penological objective. Hatter, 154 F. Supp. 3d at 945. Although slamming a food port hatch does not appear to serve any such purpose, the second amended complaint at most pleads negligence, which is insufficient to plead a Fourteenth Amendment claim. Meador v. Aye, No. 1:14–cv–0006 DLB PC, 2015 WL 236929, at *5 (E.D. Cal. Jan. 16, 2015) (quoting Maddox v. City of Los Angeles, 792 F.2d 1408, 1413 (9th Cir. 1986)). As such, plaintiff has not pleaded a cognizable Eighth Amendment or Fourteenth Amendment excessive noise claim.

### IV.     Amending the Complaint

As stated above, plaintiff's amended complaint fails to plead any cognizable claim. The court will give plaintiff a final opportunity to plead a cognizable claim by granting him leave to file a second amended complaint.

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights.  The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant.  The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting.  That said, plaintiff need not provide every detailed fact in support of his claims.  Rather, plaintiff should provide a short, plain statement of each claim.  See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must contain a request for particular relief.  Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs.  Fed. R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed. R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity.  See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading).  Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly.  See Swierkiewicz v. Sorema

////

N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all prior pleadings are superseded. Any amended complaint should contain all of the allegations related to his claim in this action. If plaintiff wishes to pursue his claims against the defendant, they must be set forth in the amended complaint.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. The second amended complaint (ECF No. 17) is dismissed with leave to amend as it fails to state a cognizable claim.

2. Plaintiff is granted thirty days from the date of service of this order to file a third amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the third amended complaint must bear the docket number assigned this case and must be labeled "Third Amended Complaint"; failure to file a third amended complaint in accordance with this order may result in a recommendation that this action be dismissed.

3. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

Dated: June 24, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB: 15
DB/DB Prisoner Inbox/Civil Rights/S/kami2245.scrn